**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

STEVE MILLER and ANDRES CASTANEDA,

        Plaintiffs,

v.

COCA-COLA BOTTLING COMPANY, et al.,

        Defendants.

Civil Action No. 12-0862 (MAS)((TJB)

**MEMORANDUM OPINION**

---

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Steve Miller ("Miller") and Andres Castaneda's ("Castaneda") (collectively, "Plaintiffs") Motion to Remand and Pay Counsel Fees (Docket Entry Number ("Doc. No.") 5 ("Pls.' Notice of Mot.")), filed on February 23, 2012.[1] On March 5, 2012, Defendants Coca-Cola Refreshments USA, Inc. (improperly pled as Coca-Cola Bottling Company) ("CCR"), Scott Chadwick, Walter O'Brien, David Pietkun, and Russ Guarino (improperly pled as Russ Querino) (collectively, "Defendants") filed Opposition to the Motion. (Doc. No. 12 ("Defs.' Opp'n Br.").) The issue before the Court is whether Plaintiffs' Complaint on its face implicates a union-management contract (Collective Bargaining Agreement ("CBA")) between Plaintiffs' Union and Defendant CCR, and subsequently subjects the case to federal question jurisdiction under the complete pre-emption doctrine and § 301 of

---

[1] Plaintiffs failed to file a moving brief in accordance with Local Civil Rule 7.1(d). However, rather than deny Plaintiffs' Motion on procedural grounds, the Court shall consider and decide the Motion on the merits. *See e.g. Evident Corp. v. Church & Dwight Co.*, Nos. 97-3275, 98-4376, 2002 U.S. Dist. LEXIS 22600 (D.N.J. Sept. 20, 2002).

the Labor Management Relations Act ("§ 301"). The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For good cause shown, Plaintiffs' Motion to Remand and Pay Counsel Fees is denied.

I. **BACKGROUND**

Plaintiffs' initial Complaint was filed in the Superior Court of New Jersey, Middlesex County, on December 15, 2011. (Doc. No. 1-1 ("Compl.") 1.) The Complaint asserted fourteen (14)[2] counts under the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey State Constitution, various New Jersey statutes, and common law. (Compl. 13-28.) Specifically, Plaintiffs' causes of action include breach of implied covenant of good faith and fair dealing, intentional interference with economic advantage, conspiracy, racial and disability discrimination, failure to accommodate, civil rights deprivation, disparate treatment, retaliation, unequal pay, hostile work environment, misconduct in office, deprivation of freedom of speech, and casting Plaintiffs in a false light. (*Id.*)

On February 13, 2012, Defendants removed the matter from State Court claiming federal question jurisdiction under 28 U.S.C. §§ 1331, 1367, and 1441. In Plaintiffs' Motion to Remand, they assert that this Court has neither original jurisdiction pursuant to 28 U.S.C. § 1441, nor subject matter jurisdiction due to diversity of citizenship or amount in controversy pursuant to 28 U.S.C. § 1332. (Pls.' Notice of Mot. ¶¶ 3-4.) Subsequent to the filing of Defendants' Brief in Opposition, the Court directed the Parties to submit supplemental briefing specifically on the issue of pre-emption pursuant to § 301 of the Labor Management Relations Act. (June 14, 2012

---

[2] The Court notes that Count Thirteen of Plaintiffs' Complaint is improperly marked as Count Sixteen and Count Fourteen is improperly marked as Count Thirteen. Nonetheless, Plaintiffs' Complaint does assert a total of fourteen (14) counts against Defendants.

Text Order.) Accordingly, Defendants submitted a supplemental brief on June 25, 2012 (Defs.' § 301 Br.), and Plaintiffs submitted their responsive brief on July 2, 2012. (Doc. No. 16 ("Pls.' § 301 Reply").)

## II.     LEGAL STANDARD AND ANALYSIS

A motion to remand is governed by 28 U.S.C. § 1447(c), which provides that removed cases shall be remanded, if at any time before final judgment it appears that the district court lacks subject matter jurisdiction. In the Third Circuit, removal statutes are generally strictly construed, and remand is favored when doubt exists as to the propriety of removal. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). Further, to determine "[w]hether federal question jurisdiction exists," the Court must examine the "plaintiffs' well-pleaded complaint[,]" while "the burden of establishing the propriety of removal" is borne by the removing party. *Stechler v. Sidley Austin Brown & Wood, LLP*, No. 05-3485, 2005 U.S. Dist. LEXIS 39213, at *8 (D.N.J. Dec. 13, 2005) (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986)); *see Bergen Reg'l Med. Ctr., L.P. v. Health Prof'ls*, No. 05-2596, 2005 WL 3216549, at *2 (D.N.J. Nov. 29, 2005) (citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991)).

"Federal question jurisdiction arises where a 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Stechler*, 2005 U.S. Dist. LEXIS 39213, at 8 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust of S. Cal.*, 463 U.S. 1, 27-28 (1983)). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Thus, Defendants may seek removal under either federal

question jurisdiction or diversity jurisdiction, but failure to adequately establish the jurisdictional grounds chosen is a sufficient basis for a court to grant a motion to remand. 28 U.S.C. §§ 1331, 1332. Accordingly, to assess Plaintiffs' Motion to Remand, the Court must determine whether Defendants have met their burden of establishing the propriety of removal.

### A. Federal Question Jurisdiction Exists Where § 301 of the Labor Management Relations Act Completely Pre-Empts a Claim

When determining the presence of federal question jurisdiction in support of removal, the "well-pleaded complaint rule" governs. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under this rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff[s'] properly pleaded complaint." *Id.* Generally, courts disregard assertions of federal defenses, be they "the preclusive effect of a prior federal judgment, or the pre-emptive effect of a federal statute, [as these] will not provide a basis for removal." *Beneficial Nat'l Bank*, 539 U.S. at 6 (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998); *Franchise Tax Bd. of Cal.*, 463 U.S. 1 (1983)).

However, an exception to the well-pleaded complaint rule exists. The "complete pre-emption doctrine" dictates that once an area of state law is pre-empted by federal law, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393. "Thus, a state claim may be removed to federal court . . . when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank*, 539 U.S. at 8. Federal statutes with such complete pre-emptive power are rare, but § 301 of the Labor Management Relations Act is one such statute, "not only preempting state law but also authorizing removal of actions that sought relief only under state law." *Id.* at 6-7 (citing *Avco Corp. v. Machinists*, 390 U.S. 557, 561-62 (1968)).

Furthermore, the Supreme Court has recognized that § 301 has "unusually powerful pre-emptive force," which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." *Id.* at 7; 29 U.S.C. § 185(a). In application, "[§] 301 governs claims founded directly on rights created by collective-bargaining agreements and claims substantially dependent on analysis of such agreements." *Caterpillar*, 482 U.S. at 394 (citing *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). Therefore, a complaint which is based on alleged violations of rights or entitlements arising from a union-management contract, or which substantially depends on interpretation of the CBA in order to state a claim, falls within federal question jurisdiction resulting from § 301's complete pre-emptive power.

In Defendants' Notice of Removal, they assert that the "Court has federal subject matter jurisdiction under [§ 301] because Plaintiffs allege adverse employment actions taken against them by CCR in violation of the [CBA] entered into between Plaintiffs' union and CCR." (Notice of Removal ¶ 3.) Additionally, Defendants claim that "[t]he Complaint in the instant case is replete with direct and indirect references to provisions in the collective bargaining agreement such that the plaintiffs' claims rely upon the construction of the CBA's terms." (Defs.' Opp'n Br. 8.)

Plaintiffs, however, deny that the CBA is implicated by the claims in their Complaint and assert that no interpretation of the CBA is necessary. Plaintiffs argue that the words "Collective Bargaining Agreement" never appear in the Complaint, which is evidence that the CBA is not implicated. (Doc. No. 5-2 ("Hawkins Remand Cert.") ¶¶ 13-14.) However, after a careful review of all of the counts within Plaintiffs' Complaint, and considering the "unusually powerful pre-emptive force" of § 301, the Court is persuaded that the CBA is implicated and the

5

Complaint is subject to the § 301 exception. *Caterpillar*, 482 U.S. at 392-93. While Plaintiffs never use the words "Collective Bargaining Agreement" within the Complaint, that certainly does not mean that the CBA is not implicated, nor does it automatically confer immunity from § 301. Furthermore, Plaintiffs' Complaint directly references a "union contract" multiple times within the Statement of Facts. (Compl. 2.) For example, Plaintiffs state that "[o]n August 8, 2010, Plaintiff [Miller] was forced to work a Flex Schedule. Plaintiff [Miller] was one of eleven employees on the State-wide seniority list that could not be placed on a Flex Shift Schedule according to agreement in the Union Contract and company policy." (Compl. 11.) Additionally, Plaintiffs allege that "actions by Defendant Guarino [sic] are in violation of plaintiff [Miller]'s seniority according to the Union Contract Article 38." (*Id.* at 12.) Moreover, the facts of the Complaint also contain multiple references to seniority, Plaintiffs' use of grievance procedures, Plaintiffs' pay and overtime, training procedures and probation, and even "a company van to which [Plaintiff Castaneda] was entitled." (*Id.* at 2-13.) As the CBA governs seniority, pay, overtime, probation, and further provides for the rights of CCR with regard to distribution of company vehicles, the CBA is fully implicated throughout the Complaint.

Furthermore, Plaintiffs' second count, which alleges a breach of implied covenant of good faith and fair dealing pursuant to Article VII of New Jersey's Constitution, is directly linked to the implied covenant of good faith which attaches to the CBA existing between Plaintiffs' Union and CCR. "Because the right asserted not only derives from the contract, but is defined by the contractual obligation to good faith, any attempt to assess liability [] inevitably will involve contract interpretation." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218 (1985). The Court is not persuaded by Plaintiffs' argument that their "claims . . . require no interpretation of CBA, but require an interpretation of other contractual agreements of the policies, directives,

rules, regulations, and orders." (Pls.' § 301 Reply 9.) Plaintiffs mistakenly assert that despite the existence of a CBA and the implied covenant of good faith which attaches to it, Plaintiffs' Complaint instead implicates another implied covenant of good faith, attaching to a contractual relationship between CCR and union member Plaintiffs that is based on company policies and wholly unrelated to the CBA. Plaintiffs rely on *Woolley v. Hoffmann-La Roche, Inc.*, 99 N.J. 284, *modified*, 101 N.J. 10 (1985), for the proposition that a company's policy can contain an implied contract.

However, the Court does not find Plaintiffs' arguments persuasive. First, in *Woolley*, no written employment contract existed between defendant and plaintiff. 99 N.J. at 286. Second, this count alleges that "the Company's policies, orders, directives, regulations, especially [in] relation to seniority, constitute an implied contract which has been violated . . . ." (Compl. 15.) Here, the effect of CCR's "policies, orders, directives, [and] regulations" on the rights of union member Plaintiffs is governed by the CBA, which outlines the rights of the business and union members within the employer - employee relationship. (*Id.*) Plaintiffs' claim of seniority, which is covered in Articles 6 and 8 of the agreement between CCR and Plaintiffs' union, is therefore a direct reference to the CBA. (Doc. No. 1-2 ("CBA") 1.) Even absent such a specific reference, since an actual contract exists with an implied covenant of good faith, no implied separate contract is necessary. Resolution of this claim requires the Court to interpret and analyze the CBA, bringing Plaintiffs' second count under the complete pre-emptive power of § 301.

The sixth count of the Complaint alleges intentional interference with Plaintiffs' beneficial economic advantage. Plaintiffs state that "Defendants' actions have also amounted to a malicious interference with Plaintiffs' beneficial economic advantage in that the defendants have caused Plaintiffs to be deprived of their entitled livelihood positions, income and benefits to

which they were entitled." (Compl. 19-20.) Under New Jersey state law, "a complaint based on tortious interference must allege facts that show some protectable right-a prospective economic or contractual relationship." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (1989). Plaintiffs agree that they must allege "legitimate expectations under an agreement whether written, oral or implied, giving rise to economic advantage." (Pls.' § 301 Reply 14-15.) The written contract which exists between Plaintiffs' union and CCR, and which provides *inter alia* for pay, position assignment by seniority, and overtime, is such a contractual relationship. The Court is not persuaded by Plaintiffs' attempt to substitute the seniority list, which is based on qualifications outlined in the CBA, as the "contractual relationship" at issue. Furthermore, the CBA provides the foundation of the right to benefits resulting from seniority, to which Plaintiffs claim entitlement within the sixth count.

Additionally, Plaintiffs' seventh count is for unlawful conspiracy and contains only three paragraphs, all of which implicate the CBA and bring this count under the pre-emptive power of § 301. The first paragraph incorporates all the prior allegations and facts, including those which directly reference the Union Contract and those that require interpretation of the CBA to state a cause of action. (Compl. 20.) The second paragraph claims that "Defendants' actions have constituted an unlawful conspiracy to deprive Plaintiffs of their Constitutional and statutory rights . . . including breach of implied contract and breach of implied covenant of good faith and fair dealing." (*Id.*) Despite Plaintiffs' attempts to characterize these alleged contractual breaches as common law causes of action, the Court's above-detailed reasoning regarding Plaintiffs' failed arguments for the existence of an implied contract holds. Reference to benefits conferred by a written contract between CCR and Plaintiffs' Union implicates the CBA. In the final paragraph, Plaintiffs further repeat allegations of interference with economic benefit and

deprivation of "livelihood income and benefits to which they were entitled." (*Id.*) Again, the Court's earlier reasoning regarding the necessity of analyzing the CBA in order to determine the income and benefits to which Plaintiffs were entitled is equally applicable here. Given the complete pre-emptive power of § 301, the Court shall not analyze the other eleven counts of Plaintiffs' Complaint.

After careful review and consideration, the Court finds that "Plaintiffs' claims are inextricably intertwined with the interpretation of the CBA between CCR and Teamsters Local 125, of which Plaintiffs at all relevant times, were union members." (Defs.' § 301 Br. 3.) The pre-emptive power of § 301 is complete and provides that the entire Complaint is subject to federal question jurisdiction if any one part of it falls within § 301's aegis. For the foregoing reasons, the Court finds that the allegations in Plaintiffs' Complaint are substantially based on rights arising out of the CBA between Plaintiffs' Union and CCR. Therefore, the Court has proper jurisdiction as a result of the complete pre-emptive power of § 301, and follows the Third Circuit in "comport[ing] with the Supreme Court's explicit directive to resolve disputes concerning collective bargaining agreements under federal labor law instead of under state law." *Pagano v. Bell Atl.-N.J., Inc.*, 988 F. Supp. 841, 847 (D.N.J. 1997).

**B.     Timeliness under 28 U.S.C. § 1446**

Removal to federal court must take place within thirty days from the defendants' receipt of a copy of the initial pleading. 28 U.S.C. § 1446(b)(1). The thirty-day time period excludes the day of the event that triggers the period. Fed. R. Civ. P. 6(a)(1)(A). Additionally, if the final day of the allotted timespan falls on a "Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

Plaintiffs' initial Complaint was received by Defendants on January 13, 2012. (Defs.' Opp'n Br. 7.) Defendants then had thirty days, excluding January 13, 2012, within which to remove the matter to federal court. Fed. R. Civ. P. 6(a)(1)(A). The thirty day time period expired on Sunday, February 12, 2012. (Defs.' Opp'n Br. 7.) Therefore, Defendants had until the end of the following Monday, February 13, 2012, to file for removal. Fed. R. Civ. P. 6(a)(1)(C). As Defendants filed for removal on February 13, 2012, the Court finds that the Motion was properly filed.

### C. Attorney's Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of removal." 28 U.S.C. § 1447(c). The Supreme Court has repeatedly established that such an award is not appropriate unless the removal was "frivolous, unreasonable, or groundless." *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 422 (1978). Accordingly, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin*, 546 U.S. at 136. As the Court has found that Defendants had a good-faith basis for removal, and that this case was properly removed to federal court, Plaintiffs are not entitled to attorney's fees.

## III. CONCLUSION

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Plaintiffs' Motion to Remand and Pay Counsel Fees is denied. An order will be entered consistent with this Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: August 24, 2012