**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEVE MILLER and
ANDRES CASTANEDA,

        Plaintiffs,

v.

COCA COLA BOTTLING
COMPANY, *et al.*,

        Defendants.

Civil Action No. 12-862 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants[1] Motion to Dismiss Counts III, IV, V, VI, IX, XII and XIII of the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Defs.' Br., ECF No. 23-1.) Plaintiffs Steve Miller and Andres Castaneda ("Plaintiffs") filed Opposition. (Pls.' Opp'n, ECF No. 24.) Defendants filed a Reply. (ECF No. 26.)[2] The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, Defendants' Motion to Dismiss is GRANTED as follows: Counts III, IV, IX, and XII are dismissed without prejudice; Count V, Count VI, and Count XIII are dismissed with prejudice.

---

[1] Coca-Cola Refreshments USA, Inc. (incorrectly pled as Coca Cola Bottling Company) ("CCR"), Scott Chadwick, Walter O'Brien, David Pietkun and Russ Querino.

[2] Plaintiffs filed a sur-reply in response to Defendants' Reply. (ECF No. 27.) Per Local Civil Rule 7.1(d)(6), sur-replies are not permitted unless leave is granted by the Judge to whom the case is assigned. As the Docket indicates that no such permission was granted, Plaintiffs' sur-reply will be disregarded.

# I. Background

## A. Procedural History

This matter was removed to this Court from the Superior Court of New Jersey. (ECF No. 1.) Plaintiffs thereafter filed a Motion to Remand that was denied because § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempted their state law claims, thus conferring subject matter jurisdiction upon this Court. (ECF Nos. 5, 19.) Specifically, the Court found that although the Plaintiffs' Complaint did not expressly reference the Parties' Collective Bargaining Agreement ("CBA"), the claims therein substantially depended on its interpretation. (ECF No. 19.) Defendants subsequently filed this Motion to Dismiss.

## B. Factual History

### a. Plaintiff Castaneda

The following facts are drawn from the Complaint and are taken as true for purposes of this Opinion. Plaintiffs are currently employed by CCR. (Compl. 2 ¶ 1, 8 ¶ 1, ECF No. 1-1.) Plaintiff Castaneda, a Hispanic male, applied for a Cooler Technician position at CCR in July 2010. (Compl. 2 ¶¶ 2-3.) He alleges that he was entitled to a company van but never received one. (*Id.*) Moreover, he alleges that his probation period was longer than normal and that he did not receive the standard four to six months of training that this position normally entails. (*Id.* ¶ 6.) In November 2010, Castaneda was demoted to a Merchandiser position for inadequate job performance. (*Id.* ¶ 8.) As a result, Castaneda complained to Human Resources about these events. (*Id.* ¶ 9.)

In May 2011, he was promoted to Cooler Mover, but alleges that he was not given the commensurate increase in pay of $7.00 per hour that is normally given to those so promoted. (*Id.*

¶ 10.) He then filed two additional grievances specifically complaining about not being called into work two Saturdays, as other technicians allegedly were. (*Id.* ¶ 12.) Defendant Chadwick then told Defendant O'Brien that Plaintiff was performing his duties unsatisfactorily, which allegedly caused Castaneda to feel "as if his reputation was being defamed." (*Id.* ¶¶ 15-16.) As a result, he alleges that he had to seek professional medical assistance for stress. (*Id.* ¶ 17.) Castaneda also enrolled at Lincoln Tech hoping to obtain an increase in pay, but never received such an increase. (*Id.* ¶ 20.) In October 2011, he injured his shoulder at work and was subsequently sent to Concentra Medical Center. (*Id.* ¶ 25.) Dr. Khaling put him on light duty for two days. (*Id.*) Castaneda explained this limitation to Defendant Pietkun who then made Castaneda come into work even though CCR does not have light duty work. (*Id.*) Castaneda alleges that as a result of the Defendants' treatment towards him, he suffers from further pain, disability, and discomfort. (*Id.* ¶ 26.) Castaneda alleges that a majority, if not all of this alleged discrimination, occurred because he is Hispanic. (*Id.* 7-8 ¶ 24.)

### b. Plaintiff Miller

Plaintiff Miller, an African-American, alleges that since 2006, he "has been subject to ongoing disparate treatment, harassment[], hostile work environment, disparate assignments, constant degrading expressions, words and attitude from the named defendants herein." (*Id.* 9 ¶ 2.) In July 2007, Miller filed a racial discrimination complaint against supervisors Gary Matinate and Scott Chadwick alleging that he and other African-Americans employed at CCR suffered disparate treatment as compared to similarly situated whites. (*Id.* ¶ 3.) Subsequently, his treatment worsened, and he developed severe emotional distress and depression for which he received outpatient therapy and was prescribed medication. (*Id.* ¶¶ 4-5.)

In August 2010, Miller was required to work a Flex Shift Schedule due to the Defendants' alleged prejudicial treatment. (*Id.* ¶ 7.) According to the CBA, Miller could not be placed on such a schedule. (*Id.*) He also alleges other racially motivated disparate treatment, including being forced to work different hours, different job assignments, and being denied transfer opportunities. (*Id.* ¶¶ 8-10.) Miller successfully filed a grievance regarding these disparities. (*Id.* ¶ 11.) As a result, he alleges he was retaliated against in the form of receiving an unfavorable work schedule. (*Id.*) He further alleges that Defendant Guerino treated him in such a way as to violate Plaintiff's seniority according to CBA Article 38. (*Id.* ¶ 12.) Specifically, he alleges that junior employees received more favorable opportunities and that Defendant Pietkun violated the seniority list by not letting Miller bid to drive a utility truck. (*Id.* ¶¶ 15-18.)

## C. Plaintiffs' Complaint

Plaintiffs' Complaint seeks to hold Defendants liable via several theories: 1) Hostile Work Environment (N.J. Stat. Ann. § 10:5-12); 2) Breach of Implied Covenant of Good Faith and Fair Dealing (Article VII of New Jersey Constitution); 3) Misconduct in Office (N.J. Stat. Ann. § 10:1-1 et seq.; N.J. Stat. Ann. § 10:6-2; Article I, VII, New Jersey Constitution); 4) Casting of Plaintiffs in a False Light (Article I, Paragraph I, New Jersey Constitution); 5) Official Deprivation of Civil Rights (N.J. Stat. Ann. § 10:6-2); 6) Intentional Interference with Plaintiffs' Beneficial Economic Advantage; 7) Unlawful Conspiracy; 8) Unlawful Retaliation (N.J. Stat. Ann. § 34:15-1 *et seq.*); 9) Place of Public Accommodation (N.J. Stat. Ann. § 10:5-1 *et seq.*); 10) Failure to Accommodate and Disability Discrimination; 11) New Jersey Law Against Discrimination ("NJLAD") Disparate Treatment and Retaliation; 12) Deprivation of Freedom of Speech and to Grieve (New Jersey Constitution Article I, Paragraphs 1, 5, 6, 18, 19);

4

13)[3] State law claims under N.J. Stat. Ann. § 10:1-1 *et seq.* and N.J. Stat. Ann. § 10:6-2; and 14)[4] Disparate Treatment and Unequal Pay.

## II. Legal Standard

### A. Standard for Motion to Dismiss

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must

---

[3] This Count was erroneously pled as Count 16 in the Complaint and will be hereafter referred to as Count 13.

[4] This Count was erroneously pled as Count 13 in the Complaint and will be hereafter referred to as Count 14.

5

next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

III. <u>Analysis</u>

A. **Count III: Misconduct in Office**

Count III alleges that CCR negligently hired and failed to properly train and supervise the individually named Defendants. (Compl. 17 ¶ 4.) "[T]he federal district court in New Jersey 'has repeatedly interpreted [the CRA] analogously to § 1983.'" *Filgueiras v. Newark Public Schools*, 426 N.J. Super. 449, 468 (App. Div. 2012) (quoting *Rezem Family Assocs., LP v. Borough of Millstone*, 423 N.J. Super. 103 (App. Div.) *certif. denied* 208 N.J. 366 (2011), *supra.*) "Under both § 1983 and the New Jersey Civil Rights Act, plaintiffs must also prove that defendants are state actors." *Wilson v. Cnty. of Gloucester*, 256 F.R.D. 479, 188 n.13 (D.N.J. 2009). This cause of action is facially defective.

In *Moore v. Youth Correctional Institute at Annandale*, the court found that "[c]ertain offenses, such as misconduct in office, N.J. Stat. Ann. § 2C:30-2, are inherently related to public office or employment. 230 N.J. Super. 374, 396 (App. Div. 1989). In their Complaint, Plaintiffs fail to allege that any of the Defendants have ever held public office or have engaged in public employment. Instead, they allege that the Defendants' acts were in violation of N.J. Stat. Ann.

§ 10:1-2, which discusses the rights of persons in public places, and that they failed to properly train and supervise the individually named Defendants. (Compl. 17 ¶¶ 3-4.) Plaintiffs fail to explain how Defendants' actions have anything to do with misconduct in office or that any of the Defendants actions are connected to public office or employment. As such, Count III of the Complaint is DISMISSED without prejudice.

### B. Count IV: Casting of Plaintiffs in a False Light

Count IV alleges that Defendants invaded Plaintiffs' privacy and cast them in a false light by alleging and publicizing their job performance as inadequate. (Compl. 18 ¶ 2.) "The tort of false light has two elements: (1) 'the false light in which the other was placed would be highly offensive to a reasonable person'; and (2) 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 589 (N.J. 2009) (quoting *Romaine v. Kallinger*, 109 N.J. 282, 294 (1988).

*Clemmons v. Guest Supply-Sysco* is similar to the case at bar. No. A-1448-09T2, 2010 WL 4226216 (N.J. Super. Ct. App. Div. Oct. 27, 2010). In *Clemmons*, the plaintiff brought a false light invasion of privacy claim against the defendant employer. *Id.* at *5. The basis for the claim stemmed from her supervisor's negative comments about her professional performance in written performance reviews. *Id.* The lower court dismissed this claim because the plaintiff "did not prove that any of defendants' criticisms of her work were publically disseminated in the manner required by that cause of action. Rather, they were contained in internal company memoranda." *Id.* In upholding the lower court's dismissal, the Superior Court noted that the claim was "patently without merit and [was] properly dismissed." *Id.* at *6.

7

As in *Clemmons*, the thrust of the Plaintiffs' False Light claim is that Plaintiffs were injured by their supervisors' negative comments about their job performance. (Compl. 18 ¶ 2.) In their Complaint, Plaintiffs summarily allege that the Defendants publicized information about Plaintiffs' poor job performance, without providing specifics surrounding the publication of such information. *Id.* In their Statement of Facts, the only relevant allegations are that Defendants O'Brien and Chadwick conveyed to Plaintiff Castaneda that his performance was not "good enough." (*Id.* 4 ¶ 8.) This, without more, is insufficient to state a claim for False Light as there is no plausible allegation that this was anything more than internal, verbal discipline, nor is there any plausible allegation that such discipline was published or otherwise made known to the public. Plaintiffs' mere recitation of the word "published" is a legal conclusion accorded no weight. As such, Plaintiffs' False Light Claim is DISMISSED without prejudice.

C.  **Count V: Official Deprivation of Civil Rights N.J. Stat. Ann. § 10:6-2**

Count V alleges that Defendants violated Plaintiffs' civil rights and coerced them into a constructive discharge. (Compl. 18 ¶¶ 1-3.) Defendants argue that this Count must be dismissed as Plaintiffs fail to allege that any of the Defendants are state actors. (Defs.' Mot. Dismiss at 6.) In response, Plaintiffs cite to *Felicioni v. Admin. Office of Courts*, which held that N.J. Stat. Ann. § 10:6-2 was to be interpreted as being divided into two separate clauses. 404 N.J. Super. 382. (App. Div. July 12, 2012). The pertinent part of the NJCRA provides:

> Any person [1] who has been *deprived* of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or [2] whose exercise or enjoyment of those substantive rights, privileges or immunities has been *interfered with or attempted to be interfered with*, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

8

N.J. Stat. Ann. § 10:6-2(c) (emphasis added).

The *Felicioni* court noted that the "placement of a comma after 'laws of the State' and before the word 'or' divides the clause into two separate, independent phrases that do not actually modify nor qualify one another." *Felicioni*, 404 N.J. Super. at 400. The Plaintiffs read this to mean that of these, the latter has a "color of law" requirement while the former does not. (Pls.' Opp'n 9.) Plaintiffs have misread *Felicioni*. Although the *Felicioni* court noted that there existed a distinction between the "deprivation of" and "interference with" civil rights, that distinction was merely noted to show that a plaintiff alleging an interference claim must also allege that such interference was employed by "threats, intimidation, or coercion." *Felicioni*, 404 N.J. Super. at 400. That distinction does not speak to the color of law requirement.

In fact, in *Didiano v. Balicki*, the court found that "the plain language of the NJCRA imposes liability on any "person" who violates a plaintiff's civil rights *under color of law*." *Didiano v. Balicki*, 488 F. App'x 634, 637 (3d Cir. 2012) (emphasis added) (holding that a prison is not considered a person for purposes of the NJCRA). Plaintiffs do not provide any authority to show that an NJCRA claim may be brought against private actors. Because Plaintiffs have failed to plausibly allege that the Defendants were acting under color of law, this count must be DISMISSED.

### D. Count VI: Intentional Interference With Plaintiff's Beneficial Economic Advantage

Count VI alleges that Defendants maliciously interfered with Plaintiffs' beneficial economic advantage in such a way that deprived them of their livelihood, income, and benefits. (Compl. 19-20 ¶ 3.) "A complaint based on tortious interference must allege facts that show some protectable right-a prospective economic or contractual relationship." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (N.J. 1989). "A complaint must

demonstrate that a plaintiff was in 'pursuit' of business. Second, the complaint must allege facts claiming that the interference was done intentionally and with 'malice.'" *Id.* (internal citation omitted) (quoting *Louis Kamm, Inc. v. Flink*, 113 N.J.L. 582, 586, (E. & A. 1934)).

Defendants argue that this Count must be dismissed as it is preempted under the LMRA. (Defs.' Mot. Dismiss 9.) Alternatively, Defendants argue that this Count must be dismissed because both Plaintiffs and Defendants are parties to the CBA, and therefore no cause of action exists under this tort. *Id.* In response, Plaintiffs argue that this Count must not be dismissed as they have not yet stated under which cause of action they will pursue relief. (Pls.' Opp'n 11.)

Section 301 of the LMRA "governs claims founded directly on rights created by collective-bargaining agreements and claims substantially dependent on analysis of such agreements." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (citing *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). This section provides that "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185.

This Court has already held that "the CBA is implicated and the Complaint is subject to the § 301 exception." (ECF No. 19.) Section 301 does not expressly preempt state labor law, nor has Congress established § 301 to be so pervasive as to implicitly preempt state law. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). "Preemption, therefore, arises only when state regulation frustrates the federal policy expressed in § 301 that relationships created by collective bargaining agreements in the private sector should be defined by federal common law." *Lepore v. Nat'l Tool and Mfg. Co.*, 224 N.J. Super. 463, 475 (App. Div. 1988) *aff'd*, 115

10

N.J. 226 (1989) (citing *Allis-Chalmers Corp.*, 471 U.S. 211). The *Lepore* court also found that "state laws proscribing conduct or establishing rights and obligations that exist independently of private agreements and that can not be waived or altered by agreement of private parties are not preempted." *Id.* Therefore, to determine whether § 301 will preempt Plaintiffs' claims, the Court must analyze the relationship between Plaintiffs' Intentional Interference Claim and the CBA. *Id.* More specifically, the Court must determine whether the Plaintiffs' cause of action is "inextricably intertwined with considerations of terms of the contract and intention of the parties." *Id.*

In *Allis*, the plaintiff brought a state tort claim against his employer alleging that it breached its duty to "act in good faith and deal fairly with [his] disability claims." *Allis-Chalmers Corp.*, 471 U.S. 206. In holding that the plaintiff's tort claim was preempted by § 301, the court noted that the plaintiff's claim was not only rooted in the CBA, but necessarily depended on an interpretation of the CBA to determine liability. *Id.* at 218. On the other hand, in *Lepore*, the court found that the plaintiff's claim against his employer for wrongful discharge in retaliation for reporting safe workplace violations was not preempted by § 301. The *Lepore* court distinguished the plaintiff's claim from that of the plaintiff in *Allis* by noting that all workers, whether parties to a CBA or not, have a right to a safe workplace. In *Allis*, the plaintiff's claim depended on an interpretation of the agreement between the plaintiff and his employer to determine the extent to which his employer's conduct regarding the handling of his disability claims differed from what the parties had agreed to at the formation of the disability plan.

Here, Count VI alleges that Defendants' actions have caused them "to be deprived of their entitled livelihood positions, income and benefits to which they were entitled." (Compl. 19-20 ¶ 3.) Although it is true that Plaintiffs do not specifically mention the CBA, the Court finds

that adjudication of this Count would inherently involve an interpretation of the CBA and is thus preempted by § 301. Simply stated, this Court would necessarily have to look to the CBA to determine what positions, income, and benefits Plaintiffs are entitled. Without such an analysis, the Court would be unable to grant Plaintiffs their requested relief. Unlike *Lepore*, there is no general right to certain positions and benefits as compared to a general right to a safe workplace. Providing Plaintiffs here with a state tort remedy would negatively impact the interests of those who are parties to the CBA inasmuch as an independent tort remedy would undercut what the Parties initially bargained for. Thus, Plaintiffs' Intentional Interference claim is preempted by § 301 of the LMRA and accordingly must be DISMISSED.

### E. Count IX: Place of Public Accommodation

Count IX seeks damages arising from the Defendants' failure to accommodate Plaintiffs' requested disability accommodations. (Compl. 21-22 ¶¶ 1-5.) "[I]n determining whether an entity constitutes a place of public accommodation, the focus appropriately rests on whether the entity 'engages in broad public solicitation, whether it maintains close relationships with the government or other public accommodations, or whether it is similar to enumerated or other previously recognized public accommodations." *Ellison v. Creative Learning Center*, 383 N.J. Super. 581, 588-89 (App. Div. 2006) (citing *Dale v. Boy Scouts of Am.*, 160 N.J. 562, 588, (1999)). While the relevant statute does provide that "[a] place of public accommodation shall include, but not be limited to: . . . any producer, manufacturer, wholesaler, distributer, retail shop, store, establishment, or concession dealing with goods or services of any kind," it also notes that "[n]othing herein contained shall be construed to include or to apply to any institution, bona fide club, or place of accommodation, *which is in its nature distinctly private*." N.J. Stat. Ann. § 10:5-5(l) (emphasis added).

Although Plaintiffs provide the Court with an interesting overview of the NJLAD in the context of handicap accommodations, markedly absent from the Complaint or Opposition are any facts to suggest that CCR maintains a place of public accommodation. (Pls.' Opp'n 12.) Count IX focuses on the impact of a failure of a place of public accommodation to make provisions for handicapped individuals while only alleging in a conclusory fashion that "Defendants are a place of public accommodation." (Compl. 21 ¶ 2.) This conclusory allegation does not suffice to meet Plaintiff's pleading burden.

The Court finds that the CCR facilities, based upon the facts proffered in the Complaint, do not constitute places of public accommodation for purposes of N.J. Stat. Ann. § 10:5-5(l). Plaintiffs do not allege that the facilities in question "engage[] in broad public solicitation" as contemplated by the *Ellison* court. *See Ellison, supra*. Nor do they allege that CCR maintains an especially close relationship with any level of government. In fact, CCR does not readily fall within the template of entities or locations typically held to be places of public accommodation. *See Thomas v. Cnty. of Camden*, 386 N.J. Super. 582 (App. Div. 2006) (county communications center); *Fraser v. Robin Dee Day Camp*, 44 N.J. 480, 487 (1965) (children's day camp which hosted swimming, dancing, athletics, dramatics, and music); *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333 (N.J. Super. Ct. App. Div. 2004) (a township police department, including both the individual officers and the structure); *Clover Hill Swimming Club, Inc. v. Goldsboro*, 47 N.J. 25, 33 (1966) (a private swimming club was a place of public accommodation because it sought to attract members of the public vis-à-vis large signs and newspaper advertisements). The Complaint does not proffer any facts that indicate CCR resembles these instances. Plaintiffs fail to plausibly allege that Defendant Corporation maintains a Place of Public Accommodation. As such, Count IX is DISMISSED without prejudice.

## F. Count XII: Freedom of Speech

Count XII alleges that Plaintiffs grieved and Defendants did nothing to remedy such grievances. With regard to Freedom of Speech, the New Jersey State Constitution provides that "[e]very person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press . . . ." N.J. Const. (1947), Art. I, par. 6; *see also State v. Schmid*, 84 N.J. 535, 538 (1980). "[T]he rights of speech and assembly guaranteed by the State Constitution are protectable not only against governmental or public bodies, but under some circumstances against private persons as well." *Schmid,* 84 N.J. at 559. "Hence, federal requirements concerning 'state action,' . . . do not have the same force when applied to state-based constitutional rights." *Id.* at 559-60. More importantly, the *Schmid* court noted:

> [W]e now hold that under the State Constitution, the test to be applied to ascertain the parameters of the rights of speech and assembly upon privately-owned property and the extent to which such property reasonably can be restricted to accommodate these rights involves several elements. This standard must take into account (1) the nature, purposes, and primary use of such private property, generally, its "normal" use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property. This is a multi-faceted test which must be applied to ascertain whether in a given case owners of private property may be required to permit, subject to suitable restrictions, the reasonable exercise by individuals of the constitutional freedoms of speech and assembly.

*Id.* at 563. With regard to the first factor, the *Schmid* court found that, in the case before it, Princeton University fostered and maintained an environment dedicated to preserving the learning process, and the University Regulations specifically mentioned Free Speech as a "basic requirement[] of the University." *Id.* CCR has no such background or mission statement;

14

Plaintiffs are employed at the Defendant's plants or distributing depots and the Complaint does not plead those locations have such goals. (*See* Ex. B 4.)

In analyzing the second factor, the *Schmid* court noted that Princeton University "clearly [sought] to encourage both a wide and continuous exchange of opinions and ideas and to foster a policy of openness and freedom with respect to the use of its facilities," and that the University's policies "contemplated substantial public involvement and participation in the academic life of the University." *Schmid*, 84 N.J. 535, 564-65. Here, nothing exists in the Complaint to suggest that CCR's facilities maintain an openness to the public.

Under the final factor, the Court must analyze the extent to which the activity sought to be protected contravenes and offends the properties' private and public uses. Count XII alleges that Plaintiffs have a right to complain and grieve to their employer. (Compl. 25 ¶¶ 1-4.) The grievance procedures under the CBA are consistent with the otherwise private nature of the facility and CCR's warehouses. This factor also militates in favor Defendants.

The Court finds that Plaintiffs have failed to demonstrate an expectation of free speech while working at CCR. Considering that the facilities are private in nature and do not encourage public visitation, such facilities are not required to accommodate Plaintiffs' freedom of speech. CCR is a distinctly private facility. As such, Defendants are not required to accommodate Plaintiffs' freedom of speech. Count XII is DISMISSED without prejudice.

### G. Count XIII: N.J. Stat. Ann. § 10:1-1 et seq. and N.J. Stat. Ann. § 10:6-2

In this Count, Plaintiffs reassert various allegations from their Complaint including that Defendants acted under color of state law and maintained a place of public accommodation. (Compl. 26-27 ¶¶ 1-12.) N.J. Stat. Ann. § 10:6-2 provides in pertinent part:

> Any person who deprives, interferes or attempts to interfere by threats, intimidation or coercion with the exercise or enjoyment by any other person

15

of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State is liable for a civil penalty for each violation.

N.J. Stat. Ann. § 10:6-2.

Plaintiffs have already brought a general claim under § 10:6-2 in Count V of the Complaint. (Compl. 18 ¶¶ 1-4.) Count V has been dismissed. In Count XIII, Plaintiffs also allege that CCR is a place of public accommodation and that Defendants acted under color of state law without providing specific allegations that would make these assertions plausible. (Compl. 26 ¶¶ 4, 9.) This count is nothing more than a reassertion of conclusory allegations found elsewhere in the Complaint. As such, Count XIII is DISMISSED.

## IV. Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' Motion to Dismiss is GRANTED. Counts III, IV, IX and XII are dismissed without prejudice. Counts V, VI, and XIII are dismissed with prejudice. An Order consistent with this Opinion will be entered.

s/ Michael A. Shipp<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE

Dated: June 27, 2013